North Carolina prohibits out-of-state retailers from selling and shipping wine to consumers, but freely allows its own in-state retailers to do so. If this were any product other than alcohol, I think there would be no question that a law that discriminates consumer state commerce in this way and protects in-state business from the rigors of competition would violate the 21st Amendment. About wine, the 21st Amendment is clearly also relevant, and the question is, the central question is, how one balances these two constitutional provisions. That balance has been said in general by three cases. Granholm v. Heald from the Supreme Court, the most recent Brooks v. Bassar, in which they basically reaffirmed Granholm, but then that case became moved and they didn't go much beyond what those cases are. Are you suggesting this is a per se commerce clause violation? Not at all, Your Honor. I am suggesting that the balance between these two provisions says that the 21st Amendment gives states broad power to regulate alcohol, but is limited by the non-discrimination clause, the non-discrimination principle of the commerce clause, which makes it kind of presumptive. You're saying the commerce clause trumps the 21st Amendment? No, Your Honor. I think that what the courts have done is tried to treat them both equally, as equal provisions in the Constitution. Is there any other? Liquor is the only commercial product that's limited or dealt with in the Constitution, basically. It is. Intoxicating liquor is the word they use. They struggled with that because they had an 18th Amendment and then a 21st Amendment, and they put this section 2 in there and said, we're going to let the states do it, right? They did. We're going to let the states do it. They did. Transportation or importation or delivery or use of intoxicating liquors in violation of the laws thereof, that's in violation of the laws of the 50 states, right, is hereby prohibited. So the only way you can transport it or import it into any state is in accordance with the law of that state. So you've got to be consistent with the law of North Carolina. That was the case of the 21st Amendment section 2, right? Well, that was the, and in the 1930s, when the amendment first came out, when it had first been announced, that was exactly the position that the Supreme Court took was that this was essentially absolute. And the 21st Amendment hasn't been changed since then. It's there. Oh, it hasn't, but it is. The Supreme Court's explained it maybe a little bit. What I've just said is what it says. That is what it says. And then the question becomes whether there is, you know, what the interaction... Now tell me about the Granholm decision. That seemed to me to be the strongest Supreme Court decision from your point of view. Why do you think Granholm supports you? Well, because Granholm said quite clearly that the 21st Amendment was limited by the non-discrimination principle of the Commerce Clause. And it said quite clearly that if a state allows the direct shipment of wine, it must do so even-handedly. In other words, it looked at the laws of the state and saying, if a state outlaws any shipment or direct shipment of wine, then you can't bring it in from out of state. But if the state permits in Granholm wineries, if the state permits in-state wineries, permits some wineries to ship directly, then the laws of the state do not prohibit shipment. It becomes down that they only prohibit... All right. Well, let's suppose that we were just hypothetically to agree with you that there was a constitutional violation here. You still face a real question about what the remedy should be. And so I think you have some good points to make with respect to the Commerce Clause violation. But I also think Judge King makes a powerful point when he talks about the 21st Amendment. And so the question is, I think, how do we give effect to both? Why wouldn't it be fair to say we're going to give effect to the Commerce Clause a la Granholm by noting the stark difference in treatment between in-state retailers and out-of-state retailers? But we're also going to give effect to the 21st Amendment and its consignment to the state of broad powers over alcohol. And the state talks about its three-tier system and how important that is. And so is it possible to agree with you on the violation aspect of this case? But to agree with North Carolina as to remedy, because what the state is suggesting here is you can achieve even-handedness here by barring in-state retailers from shipping directly to North Carolina, Attorney General is suggesting. And it would follow the Severance Clause and the legislative intent. And it would preserve North Carolina's chief interest in this case and under the 21st Amendment in regulating alcohol through its three-tier system, which I think is a very strong point. I'm not sure this needs to go all or nothing. I think you have a good point as to the Commerce Clause violation. But I also think North Carolina under the 21st Amendment has a very strong point to make under the remedial aspects of this case. And what I'm looking to do is to say that there are two strong interests here, the 21st Amendment on the part of the state and the Commerce Clause on the part of the union and not avoiding home cooking that gives in-state enterprises a distinct advantage. So you can win on violation, but don't you have significant problem with respect to the remedy? That was exactly the situation in Beskin versus Easley back in 2003 when this court found that indeed the Commerce Clause prevailed on merits, that the state had not met its burden of justice. You suggested in your brief that the remedy here should be to allow out-of-state, to allow in-state retailers to be able to ship wine directly to consumers. That's what you suggested, right? Yes, John. So, and that would achieve even handedness, but it would just carve up North Carolina's interest in its three-tier system. And it would undercut the state's interest under the 21st Amendment. So our federal union has a dormant Commerce Clause interest that I think Supreme Court cases like Granholm underscore, but the state has a very strong interest in the 21st Amendment. And why not try to reconcile them in a manner that gives effect to them both? I know you don't agree with that because you want the remedy to be to allow out-of-state retailers to ship directly to consumers, but that really tears up the state's interest here and their three-tier interest in being able to regulate and tax, both regulate and tax alcoholic beverages. And they can do that much more easily through their three-tier system than by expanding all these exemptions. So what's wrong with that? Two things. One is to make it clear. The Commerce Clause and the basic principles of the non-discrimination principle is right now, North Carolina statutes, their General Assembly has already decided that it wants to allow in-state retailers to ship. They've already passed that statute at H-1014. Then they also have a statute that says out-of-state retailers may not. One has to strike one or the other. So it is not the situation that allowing in-state, allowing striking the ban on out-of-state shipping is striking one statute. If you strike the ban on... You know, but if you say the only remedy here is to allow out-of-state retailers to ship directly to consumers, what in the world does that do to North Carolina? Because you have really here, they say 8,000 licensed in-state retailers, and you have 400,000 in the out-of-state retailers. And so if we say, oh, you've got to allow all of these out-of-state retailers to ship directly, you know, that's very hard for the state to be able to keep track of and regulate and do all those things. And they do have, the state does, have a real interest here in regulating alcohol abuse. And you're going to fling it wide open and you're going to let consumers, or maybe you say you wouldn't, but it sure becomes easier if 400,000 out-of-state retailers, who knows how they would, what they would do. It's just, there's a way to, it'd be harder to tax, it'd be harder to regulate, be harder to regulate licensing schemes. And all I'm suggesting to you is there's a way to vindicate both constitutional provisions that afford substantial protection to the legislature's intent and the Attorney General's representations. Counsel, could I, maybe along both my colleagues' points, doesn't the three-tier system itself, which I know there's different views of it, but I think the Supreme Court has largely endorsed the basic structure of a three-tier system. And doesn't the three-tier system itself by its very nature discriminate against out-of-state retailers? What, you mean a specific state's three-tier system rather than the three-tier system? Yeah, I mean, yes. Because in North Dakota, they were kind of endorsing, their endorsement endorsed the three-tier system as a general thing and then quite specifically said it is legitimate as  well. But if you have a system, a three-tier, almost all, I realize the court has said, look at them individually. I think that is fair. And I realize the court has said that not every provision associated with it automatically is good or is constitutional. But the basic notion of those systems are that you divide the production, the wholesale, and the retail. And that the wholesale and the retail are done by in-state wholesalers and retailers, which prohibits out-of-state retailers from engaging in that. Isn't that clear? That's just restating discrimination against out-of-state interests. There's a difference in ownership for retailers has come through the three-tier system, a wholesale and retail in another state. The North Carolina has no three-tier system for wine. It allows wine to... I got that argument and that's a fair, potentially a fair point that once you kind of make the rule you have about producers, maybe that's an issue. I want to ask about that. But on the retail side of it, the three-tier system already discriminates against out-of-state retailers. And it seems to me if the court allows that as a general proposition, how is it more problematic to allow the in-state retailers who already have that benefit under the three-tier system to do it directly versus through a retail store? How does it protect the in-state? I mean, I know that the three-tiered system itself has some protective benefits and the court has said it's also got some public health benefits. I mean, yeah. The court has also said that the state to ban totally rather than bring them into the system. A total ban requires a proof that paragraphs talking about alternatives. Baskin and Granholm talk about the need for the state to not just to say that's all they've done. They've said this is important, but they have no evidence as to why. They have no evidence. Well, Tennessee's talking about something that the court said was a non-essential element, which seems like a... I understand that. The court talked about it being a non-essential element, but isn't a retail, limiting retail, whether it's direct shipments or just at a store, isn't that an essential element of a three-tiered system? No. What the court said, the court looked at whether something was essential by asking two questions. One is, is it used most... You didn't answer that spot. Excuse me. I thought I was... I apologize. I thought it was answered. You asked, isn't it essential? Isn't it essential to a three-tiered system that the retailers are in-state? No. 16 states don't require it. That's exactly the test the court used in Tennessee Wine. As to the residence requirement, they're sent instead. A number of states don't require it. What is essential? It cannot be essential. Tell me the essential parts of a three-tier system from your standpoint. The essential parts of a three-tier system, according to... According to you. First step, a manufacturer must distribute to a wholesaler. North Carolina doesn't require that, so they have no three-tier system to begin with. Second step is a wholesaler must distribute to a retailer to prevent vertical integration among the tiers. The fear back at the time of that, producers, mostly beer producers, were... So you're just saying wholesalers, they have to be separate. You're not saying... You're saying the moment you put a residency requirement in there, you've gone outside the essentials of a three-tiered system? They have to be licensed. It's a licensing system to separate the tiers. Okay. I understand your position then. Thank you. Well, I thought your position, and I really appreciate my colleagues' questions, which I thought were excellent. But I thought your position was that they had, in permitting direct sales from wineries to consumers, that the state had already varied from its three-tiered system, and that if you're going to vary from the three-tiered system, you don't have to vary from it at all. But if you're going to vary from the three-tiered system, you can't do so in a way that draws stark differences between in-state and out-state retailers. Now, it's up to North Carolina how they want to achieve even handedness, but I thought your point was, yes, the state has a very strong interest in the three-tiered system, but they have distinctly varied from the three-tiered system here, and they've done so in a way that differentiates in-state and out-state. But I would carry it one step beyond, because I think there's a way to vindicate both the essentials of the three-tiered system and the essentials of the Commerce Clause. And it's a funny thing, because when you read the briefs, North Carolina doesn't really seem to object to that, but said if there's a Commerce Clause violation here, go ahead and even that up by allowing in-state, by prohibiting in-state retailers from selling directly to consumers. And I know you don't want to go in that direction, but I think we are obliged to respect North Carolina's interest under the 21st Amendment. But my only point is that the North Carolina's three-tiered system is very important. I think it's a very important system. But if they're going to vary from that, they can't do it in a way that just starkly, they can't say, well, we have a three-tiered system, but okay, we're going to vary from it, and we're going to do so to the detriment of out-of-state concerns. That's the difficulty, you see? Yes, and that investment essentially was sent back to the legislature to decide which they wanted to choose. Let everyone ship or go back to the old system where you could only get your alcohol at the neighborhood store. And what they chose the last time in 2003 was to treat, to let every, it was wineries, to let all the wineries ship. They acted within six months. Legislative intent, we now know, at least we have a suggestion as to what the intent of the North Carolina legislature is. It has steadily expanded. All right. Okay. Thank you very much, sir. You have some rebuttal. If Judge King or Judge Quaylebaum has any further questions, we can, otherwise we would just leave all that for rebuttal. All right. May it please the court. I'm Ryan Park from the North Carolina Department of Justice, and I represent Hank Bauer, chair of the North Carolina Alcohol Beverage Control Commission. To pick up on the discussion with Judge Quaylebaum directly, I don't think there is any way to read the Supreme Court's jurisprudence on the 21st Amendment, other than that discrimination that is inherent in the three-tiered system and its essential features is unquestionably legitimate. There are two essential features that the Supreme Court has expressly validated, and they're both relevant here. First is in Granholm. This is page 489 of that decision. They said explicitly that states requiring retailers to purchase their alcohol from in-state wholesalers is a valid aspect of the three-tiered system. The second is the in-state physical requirement. When you say in-state retailers can ship wine directly to consumers, you cut the wholesalers out, don't you? That's actually not correct, Your Honor. I don't understand that. You're saying that they can ship directly to consumers. So what does that do to the wholesaler link in the three-tiered system? If you're speaking about the wineries, Your Honor, two points I'd make on that. This is an incredibly narrow slice of the overall wine market. The record is very clear on that. I direct the Court to page 165 of the Joint Appendix, and that's plaintiff's own evidence that shows that less than 1% of the Maryland wine market is directly from wineries. And so this is a narrow exception. Well, if it's not that big a deal, then why not go back to a pure three-tiered system and bar the in-state retailers from sending directly? Then you wouldn't be up here. It wouldn't be any Commerce Clause problem. And you say, I mean, it may be just a narrow slice, but it seems to be awfully important to you. I don't have any problem with, and I love the three-tiered system. I think it makes an awful lot of sense. What troubles me is when we allow carve-outs that seem to me to directly conflict with basic Commerce Clause principles. That's what it is. It's these carve-outs, and once you let the carve-outs get going, you know, you're going to have your cake and eat it too. Oh, we have our three-tiered system, and we want you to vindicate it. But at the same time, we want the freedom to vary from the three-tiered system in a way that disadvantages out-of-state enterprises. If I could separate out the direct from winery shipping and the direct shipping from retailers, these are two separate restrictions. And the direct shipping from retailers, which is the primary focus of B-21's case, is not a carve-out from the three-tiered system. So they would like this case to be about differential shipping requirements for in-state and out-of-state retailers. But that fundamentally misunderstands North Carolina's regulatory scheme. All out-of-state retailers are banned from making sales to any North Carolina consumer. And so if they're banned from making sales, that's an inherent aspect of this three-tiered system, and shipping is merely an adjunct to a lawful sale. But to the extent we consider, because your colleague makes the point, Judge Wilkinson makes the good point, that the Supreme Court has given a close look at exceptions to the three-tier system. And isn't North Carolina's exception on the winery example available both to in-state wineries and out-of-state wineries? That's correct, Your Honor. So to the extent North Carolina has an exception to the three-tier system by allowing wineries to sell direct, that is not discriminatory. It applies in-state now. Is that right? That's correct, Your Honor. And your point that while there is a difference in in-state and out-of-state retailers, you acknowledge that, but that's the way it always is in three-tier systems. And this is just an additional way retailers that are in-state can sell their product. That's correct, Your Honor. That's our basic position. And to elaborate on the wineries exception, if I may, at the time of Granholm, Michigan allowed for in-state and out-of-state, or sorry, for in-state retailers to direct deliver, including on orders that were consummated online. And that was pressed by the challengers in Granholm. And the Supreme Court still validated the three-tier system. And so I think the basic framework that Your Honor laid out is the state's that if there's going to be an exception from the three-tier system, that has to be fair. But within the system, if there's discrimination inherent in the system, then that's authorized by the 21st Amendment. You know, I find this hard. I find Granholm and Tennessee wines hard. So I'll just say that to everybody, maybe other folks who have an easier time with it to me. And it seems, as best I can tell, the thing that the issues we just talked about is, you know, is it essential to the three-tier system becomes important. And if it isn't essential, like the two-year residency requirement, there is a rigorous analysis. If it is essential, and a lot of the factors, quite frankly, that you say are the reasons for this thing are things the Supreme Court has kind of been skeptical of. So, you know, even if we might think they're reasonable, the Supreme Court says you can accomplish them other ways. So as best I can tell, this becomes an issue of what's essential to the three-tier system. And we have to decide whether a retail seller requirement is, or as your counsel say, you know, that they're right. Not every state requires that. Maybe it's just that you separate them. Why are you right there? Why is not the fact that, you know, 16 other states or whatever other states don't require that? Why does that take it out of the essential category? So I agree, Your Honor, that, you know, there is likely to be some sort of common law of what constitutes an essential feature of the three-tier system. And that might be how these cases progress. But we do know two things. The Supreme Court has said two things very clearly. In Tennessee Wine, it said, and this is 2475, that an in-state physical presence for a retailer is a valid non-discriminatory alternative. That's what the court held in Tennessee Wine. And so here's that. Well, sure. I mean, I would say that, I mean, out-of-state retailers are disadvantaged by being out-of-state. It's always the case that an out-of-state business, simply by virtue of its location, is relatively disadvantaged to an in-state retailer, which is located within the state and presumably more amenable to taxation and presumably is closer to its customer base. So being in-state has certain inherent advantages. But the question is, should we add to the inherent disadvantages of out-of-state concerns a stark differential as a matter of law? And I don't know how far we go with this principle, because we can say, oh, well, because in-state retailers are advantaged, we're going to give them this advantage and that advantage and the other advantage as opposed to out-of-state. And how far do we go? It seems to me that there's, you know, a little carve out here becomes a larger carve out there. And you really open the door to a very unfortunate principle because the very coherence of this union depends upon not having trade barriers from one state that affect another. The states have important interests, but their interests are less significant when it comes to interstate trade than when it comes to regulation of things such as marriage or divorce or the normal or property law. But when it comes to interstate trade, it's different. And you made some good suggestions, counsel, about the remedial aspect of this. You made some very good suggestions about the fact that there's a severance clause and there's a fact that North Carolina doesn't have an interest in just letting out-of-state retailers ship directly to consumers. You said what the North Carolina Attorney General's position is. You said this could, you've made such a good case with respect to the remedy here, which would be to strike, which would be to bar the in-state. And what you saw is, you know, there's a special interest that you want to give favor treatment to as a matter of interstate trade. But why not adopt the remedial proposal that you had? I got the distinct impression from reading your brief that you would be pretty happy with the fact that we would bar in-state retailers. It might disappoint the in-state disappointing the in-state retailers versus North Carolina's genuine interest, which you've eloquently articulated in preserving the three-tiered system. Why not save yourself a lot of trouble and just make the small amendment to the statute? And then you won't have all of these problems. If I may, I'd like to clarify that we would not be okay with that rule. I mean, it's an alternative argument on remedy because we do not believe that there is any relevant discrimination that is not authorized by the 21st Amendment. And if I may, with respect, I think that Your Honor may be misunderstanding North Carolina's regulatory scheme. I would, you know, recall this court's discussion in Beskin and Judge Sutton's discussion in Whitmer that a discriminatory requirement that one similarly situated entity has to go through the three-tier system and another similarly situated entity does not is itself discrimination. And so, you know, I know we're talking about the remedy as if, you know, direct shipping will be allowed for everyone. But if that occurs, then out-of-state retailers will have a very distinct regulatory advantage because I think both sides agree that the wholesaler requirement, the in-state retailer requirement, and all the taxation burdens make it much more costly to go through the in-state three-tier system, which is fundamentally the point that North Carolina has a sovereign interest in restraining the, you know, unrestrained flow of cheap alcohol into our state and all the public health and safety issues. So you're telling me the differential treatment is really similar non-discriminatory treatment. That seems kind of a contradiction in terms. Well, let me put it this way, Your Honor, that part of the reason why the state feels very strongly that the remedy that Your Honor proposes would invade our sovereign 21st Amendment interests is because any adjunct to the three-tier system can be framed as discriminatory. There are all sorts of requirements where out-of-state retailers are completely barred from making any sales. And so if you start shipping away at North Carolina's three-tier system, you could say, well, you know, North Carolina allows for curbside pickup at liquor stores or allows for this variety of wines at in-state retailers. But, you know, that variety of wines is not available for out-of-state retailers. You know, curbside pickup is not allowed for out-of-state retailers. These are simply adjuncts to the if they want access to North Carolina's market, they have to go through the three-tier system. So counsel, let me follow on one other thing I wanted to get your views on. In both Granholm and in Tennessee wines, the provisions there were analyzed and the court looked at whether there was concrete evidence, quote unquote, that the provisions that were being challenged were for public health as opposed to protectionist purposes. Is it North Carolina's position that that requirement is not necessary to this provision because it's an essential part of and it has satisfied? So if I may, both. So, you know, I think there's a two-part test, whether there's discrimination at all that is barred. And, you know, the Eighth Circuit said there's no discrimination at all for the reasons that I just stated. The Sixth Circuit said, you know, we're going to reserve judgment but go on to the second part of concrete evidence. So on the concrete evidence standard, I think we satisfy it pretty clearly. And I would ask the report, this is page 289 to 292, and there really could not be stronger academic and government, you know, official evidence that the three-tiered system reduces the flow of alcohol and that has knock-on effects on a whole range of public health. But nobody is suggesting that you abandon that. Nobody is suggesting that you've got to allow out-of-state retailers to ship directly to consumers. What you're arguing about is the state's interest in not allowing out-of-state retailers to ship directly to consumers. But nobody is saying that you have to depart from that state interest. It is perfectly, you can retain all of the interest that you have talked about, the taxation, the regulation, all of those advantages, the fact that you have fewer numbers, you can curb sales to minors, everything you legitimately you have posed. Nobody, absolutely nobody is saying that you have to give any of that up. All they're saying is, when you get down to imposing rules of trade between the states, there's a way to preserve your own interest without starkly, and you used the word discrimination, which is sort of loaded in my view, starkly differentiating between in-state and out-of-state interests. You know, if there's a more core principle to the Commerce Clause, I don't know what it is. And there is differentiation here, and I don't know how far this differentiation is allowed to go. And the whole point is, you're saying that North Carolina has a sovereign interest in this and that, and that's fine. What you don't have a sovereign interest in is discriminating or differentiating between in-state and out-of-state businesses. And, but you do, and nobody, I want to make the point clear, nobody is saying that you have to give up your interest in not allowing out-of-state retailers to ship directly to consumers. Nobody, you can, you can have that prohibition on the books. Nobody's saying you can't. So if I may, I'd like to try to one more time to convince you that the discrimination that your honor has identified is not cognizable under the 21st Amendment. And I think it's helpful to look at the North Carolina, I'm sorry, the North Dakota decision from the Supreme Court. And what the court said there is that, you know, if you look at a specific provision that might appear discriminatory, if you take a broader lens, you'll see that there's no discrimination at all. And really, shipping is just a byproduct of allowing in-state retailers to make sales. And that's our fundamental point, that that is not discrimination, because there are, it's just a mere way of delivering a lawful sale to a consumer. And so I think if, and the reason why that's a concern to North Carolina, to all states, is that if you start to make those distinctions between, well, you know, all these aspects of the three-tier system are allowed for in-state retailers, in-state interests, and not allowed for out-of-state interests, then that's going to start chipping away at a whole host of provisions that are, you know, simply an adjunct to the three-tier system. So I just fundamentally push back on the idea that shipping is the correct frame in which to view the issue. Well, it's a question of how the shipping is done. Nobody's saying that it's, I mean, the three-tier system would just normally have the shipping go through the wholesaler, which is an integral part of the three-tier system. There are lots of states that don't have this carved out for in-state, for in-state retailers. There are many, many states that don't, that don't accord this kind of preferential treatment. Well, I think I would just say in response that there are 24 states that allow for, you know, in-state retailers to make these kinds of shipments and don't allow out-of-state retailers. And so what B-21 is asking for... But there are a whole lot that treat them on even terms. I think that that is, I guess, if I could sum up, I think that, you know, that is the state sovereign authority under the 21st Amendment to adjust the details of its regulatory system for alcohol. All right. We thank you. Ask questions. North Carolina's interest, primary interest here, or at least that espouses publicly, public safety and revenue? Yes, your honor. So I would say the primary interests are public health and safety, and there's a lot of various... Public health and safety, I meant, I said public safety, public health and safety. And that's the primary interest. That's correct. Secondarily, revenue. That's correct. That's everything. Everything that you do is tied to those interests. Well, there are other... In the context of regulating liquor. I think there are other interests in terms of preventing access to minors and to just having... That's part of the public safety and interest. I think that's correct. Well, I mean, I would include, yeah, underage sales. Yes, your honor. And if I may, I just would like to point out... Over consumption, all that stuff. That's right. I mean, but anyway, is that what North Carolina espouses that it's doing? That's our primary interest. And I think what I would say is to take a step back. Of course, it's the state and making all its regulatory decisions on alcohol is trying to balance competing interests. So we're trying to balance the interest in the vast majority of consumers who are ordinary drinkers and can responsibly drink in moderation. And this narrow subset, problem drinkers, binge drinkers, and alcohol dependent drinkers, who create a really scary level of social harm. So I would just like to make one example. There was an Illinois tax. This is at page 289, 290 of the record. That was a pretty modest tax increase. And academic studies have shown, government analyses have shown, that this minor tax reduced the overall statewide traffic fatality rate by 26%. And that it decreased the prevalence of certain sexually transmitted diseases by 21% to 11%. All right, but wouldn't your interest in promoting responsible drinking be furthered rather than curtailed by requiring in-state retailers to go through the state's three-tiered system and the wholesalers and everything? If what you're interested in doing is promoting responsible drinking, then bring the in-state retailers within the aegis of the three-tiered system. Well, I think, Your Honor, what that exposes is that these are fundamentally policymaking decisions because you're balancing competing interests. I mean, North Carolina, the winery exception, for example, is a niche market of wine enthusiasts who want a greater selection of wines than the 90,000 that are available from North Carolina retailers. It's always easy to balance the interest by differentiating against an out-of-state business. And that's an easy balance. Well, and that's what the Commerce Clause is designed to prevent, a balancing of interests that favors in-state concerns. I'll just make one point in response to that. It's too easy to do. It's too easy to do. And the problems under the Commerce Clause with surrendering to parochialism, that's what concerns me. I think that the in-state, out-of-state terminology is a little bit misleading. No, it's not misleading at all. That's the way the law is framed. Well, most of the, well, I guess, from a practical standpoint, most of the largest wine retailers, alcohol retailers in North Carolina are out-of-state businesses, Harris Teeter, Target, Walmart, Total Wine. All they have to do is comply with North Carolina's three-tier system, and then they're considered an in-state retailer. So B21 wines, if they would like to comply with our three-tier system, they have full and equal access to the North Carolina market. All right. Thank you very much, sir. We appreciate it. Thank you. Mr. Tanford. Thank you very much, Your Honor. A couple of minor points. One is that earlier on, it was mentioned that is in the record, there are 400,000 out-of-state retailers. If you look deeper in the record, it shows that in states that actually license, we're not suggesting that they should allow every, you know, shipping without licensing, without joining their regulatory system. These are our out-of-state retailers. The plaintiff wants a license, but North Carolina won't give them one. They're willing to comply with regulations. They're willing to comply with exactly the same regulations about age verification and remitting taxes as all wineries do. Their argument about that there's a public safety and tax danger from out-of-state shipping is belied by the fact that they allow out-of-state wineries to do so, and they manage to collect taxes and protect the public safety. We are not asking for unlicensed and unregulated willy-nilly shipping. I agree. That would be a real problem. I think that's a fair comment, is if you're going to, you know, rely on the three-tier system, do it, but do it consistently. And once you've kind of, you know, made an exception for wineries, do you still get the benefit? I don't know that we got a pellet case that really addresses that point. I don't think, I think I recognize here that the difficulty of balancing these two provisions is there, you mentioned there are 24 states or something that are in this process. There are about 10 of those that are now in litigation. Exactly because this is really a new area. The question I have is in the absence of a Supreme Court case that deals with that, you know, the North Carolina position is, yeah, we do. They're not, you know, they're not ignoring that. They're just saying that's such a small sliver that we have the sovereign prerogative to do that and still maintain our interest. And so, you know, I think our question or a question is whether, if you've kind of made an exception to the three-tier system, do you give up all your benefits of it? Or do you say, look, the 21st Amendment's a pretty unique animal. As Judge King said, it's the only amendment that deals with a specific project like this. And it, you know, seems it just is unique. And is that something that we really have the benefit to come in and second-guess North Carolina for carving out a little exception? Well, the Supreme Court, I mean, the Supreme Court has said yes. The Supreme Court, I mean, in the absence of specific precedents, it seems to me you fall back to general constitutional principles. Principle number one is, if you look at the way that they talk about the 21st Amendment, both Granholm and Tennessee wine, the Supreme Court is clear that the 21st Amendment did not constitutionalize the three-tier system because the three-tier system didn't exist. It constitutionalized the law prior to prohibition. And that law prior to prohibition contained a provision in Supreme Court cases and the Webb-Kenyon Act, not the one that preceded the Webb-Kenyon Act, I'm sorry, that said the limits of a state's authority is with discrimination against interstate commerce. So that notion of that the boundary of the state's power to regulate its three-tier system is discrimination unless they can prove that discrimination is necessary or reasonable because there is no reasonable alternative. North Carolina admits there's a reasonable alternative. They allow out-of-state wineries to bypass their three-tier system and sell directly to consumers as long as they get a permit, remit taxes, comply with a set of regulations about labeling and reporting to the state. And so there is a reasonable alternative. And every single prior case has said there must be some evidence that the alternative will not work. It's working in other states. There's evidence, extensive evidence, in the record that the states that allow direct shipping do not, in fact, experience any increase in consumption, in part because we're talking about wine and not, as in the Illinois case, a tax on liquor. But that's an empirical question as to whether there's an increase in irresponsible drinking or what have you. And I would think that's a matter of legislative competence. And I don't feel competent to talk about what the actual effects on drinking are of a ban on out-of-state, of allowing out-of-state sales, retails to sell directly to consumers. It seems to me, and this is where I part company with your position, it seems to me that the 21st Amendment requires and the three-tier system requires that we respect the state's choice of remedy. And they've laid it out for us. They've said this, they don't, they said just bar, the remedy is to bar in-state retailers from shipping directly to consumers. And that's, there's a good deal to be said by simply vindicating the state's empirical judgments. I just, I, I fundamentally, Quickly, because your time is expired. If I can just address, I disagree that the legislature has said anything yet about which remedy it prefers. There is, their severance provision says severed unconstitutional part. It doesn't say, Because they've got, they have a severance, the legislature has a severance provision that's in that statute. The Attorney General has represented to us that the severance provision would allow, if he was forced to it, would allow barring in-state retailers from shipping directly to consumers is infinitely preferable than to open it, to open such shipments to out-of-state retailers. So we have, we have enough here. At any rate, Counsel, we've appreciated your argument and we appreciated your, of the opposing arguments. If Judge King or Judge Quattlebaum has any further questions for you, I'm happy to let them answer it. Judge King, do you have anything further you wish to question Mr. Tamford about? No, Your Honor, I do not. Judge Quattlebaum? No, I don't. Thanks, Counsel. I appreciate the arguments. Thank you. Thank you both for your arguments. We appreciate both of them a great deal. And we will adjourn court and conference the case.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.